1          UNITED STATES DISTRICT COURT

2        EASTERN DISTRICT OF NEW YORK (BROOKLYN)

3   UNITED STATES OF AMERICA,
                                    Case No. 1:18-cr-00137-EK-
4                Plaintiff,          CLP-1-2

5   v.                              Brooklyn, New York
                                    May 2, 2022
6   MOHAMAD YASSINE AND HASSAN       3:54 p.m.
    RAHMAN,
7
                 Defendants.
8

9        TRANSCRIPT OF INITIAL APPEARANCE, ARRAIGNMENT HEARING
              BEFORE THE HONORABLE SANKET J. BULSARA
10                UNITED STATES MAGISTRATE JUDGE

11  APPEARANCES:
    For the Plaintiff:          Nomi D. Berenson, Esq.
12                              U.S. Attorney's Office
                                271 Cadman Plaza East
13                              Brooklyn, NY 11201

14  For the Defendant:          Deborah Colson, Esq.
    (Mohamed Yassine)           Colson Law, PLLC
15                              80 Broad Street
                                19th Floor
16                              Brooklyn, New York, NY 10004

17  For the Defendant:          Florian Miedel, Esq.
    (Hassan Rahman)             Miedel & Mysliwiec, LLP
18                              80 Broad Street
                                Suite 1900
19                              New York, NY 10004

20  Interpreter:               Mounir Khadder (Arabic)

21  Clerk:                     M.S./Sonia Galeano

22  Court Recorder:            Electronic Sound Recording

23

24

25

```
 1   Transcription Service:          Chris Hwang
                                     Abba Reporting
 2                                   PO Box 223282
                                     Chantilly, Virginia   20153
 3                                   (518) 302-6772

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24   Proceedings recorded by electronic sound recording;
     transcript produced by transcription service.
25
```

1                                    **INDEX**

2

3                                                                    Page

Motion, denied                                        23

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Call to order at 3:54 p.m.)

2              THE CLERK:  This is criminal cause for an arraignment

3    on a superseding indictment.  It's 18-CR-137, United States v.

4    Mohamad Yassine and Hassan Rahman.

5              Counsel state your appearances, please, starting with

6    the Government?

7              MS. BERENSON:  Good afternoon, Your Honor, Nomi

8    Berenson on behalf of the United States.

9              THE COURT:  Good afternoon.

10             MS. COLSON:  Good afternoon, Your Honor, Deborah

11   Colson on behalf of Mr. Yassine.

12             THE COURT:  Good afternoon.

13             Good afternoon, Mr. Yassine.

14             MR. MIEDEL:  Good afternoon, Your Honor, Florian

15   Miedel on behalf of Mr. Rahman.

16             THE COURT:  Good afternoon.

17             Good afternoon, Mr. Rahman.

18             MR. YASSINE:  Good afternoon, Your Honor.

19             THE COURT:  Okay, gentlemen, the reason you're here

20   today is because a grand jury has returned what's known as an

21   indictment that charges you with certain crimes.

22             And the purpose of today's proceeding is for me to

23   explain to you your rights and determine what happens next in

24   your case.

25             The first thing, I must -- I'm going to ask both of

1   you a series of questions that -- and just so that the record

2   is clear as to who is answering, I will call on you one at a

3   time or your lawyers one at a time.

4           Mr. Yassine, are you understanding these proceedings

5   through the use of an interpreter?

6           MR. YASSINE (through interpreter):  That's correct,

7   Your Honor.

8           THE COURT:  And Mr. Rahman, same question for you?

9           MR. RAHMAN (through interpreter):  Yes, I do

10  understand, Your Honor.  Thank you.

11          THE COURT:  Okay.  Gentlemen, because you've been

12  charged in a criminal case, you have certain rights as

13  Defendants in a criminal case.

14          First is your constitutional right to remain silent.

15  And what that means is you don't have to make a statement at

16  any time.

17          You don't have to make a statement to any law

18  enforcement official.  If you've made a statement in the past,

19  you're under no obligation to make a statement in the future.

20          If you do make a statement, however, that statement

21  can be used against you including in the case that has brought

22  you here today.

23          Mr. Yassine, do you understand your right to remain

24  silent?

25          MR. YASSINE:  Yes, yes, Your Honor.

1          THE COURT:  Mr. Rahman?

2          MR. RAHMAN:  Yes, I do understand that, Your Honor.

3          THE COURT:  All right, thank you.  Okay, gentlemen,

4    you also have a right to counsel or a right to a lawyer.  And

5    you have a right to have a lawyer represent you at all stages

6    of your case from the time you're arrested to any trial or any

7    appeal.

8          And you have a right to a lawyer of your own

9    choosing.  If you couldn't afford a lawyer, the Court would

10   appoint a lawyer for you.

11         And you have the right to represent yourself if

12   that's what you wish to do.

13         Mr. Yassine, you understand your right to counsel?

14         MR. YASSINE:  Yes, Your Honor, thank you.

15         THE COURT:  And Mr. Rahman, you understand your right

16   to counsel?

17         MR. RAHMAN:  Yes, Your Honor, I understand.

18         THE COURT:  Okay, and Ms. Colson, you're retained

19   counsel, correct?

20         MS. COLSON:  I am.

21         THE COURT:  Okay, and Mr. Miedel as well?

22         MR. MIEDEL:  Yes, Your Honor.

23         THE COURT:  Okay.  And Ms. Colson, have you had an

24   opportunity to review the Superseding Indictment with Mr.

25   Yassine?

1          MS. COLSON:  Yes, I did that this morning, Your

2    Honor.

3          THE COURT:  And were you able to either have it

4    translated in written form or oral form?

5          MS. COLSON:  We translated it in oral form.

6          THE COURT:  And does Mr. Yassine wish to have a

7    public reading of the charges against him in the indictment?

8          MS. COLSON:  He does not, Your Honor.

9          THE COURT:  And is he prepared to enter a plea at

10   this time to Counts 1 and 2 in the indictment?

11         MS. COLSON:  Yes, he pleads not guilty to both

12   counts.

13         THE COURT:  Okay, the Court notes that Mr. Yassine is

14   waiving his right to a public reading and the Court is entering

15   a plea of not guilty to Counts 1 and 2 in the Superseding

16   Indictment against him.

17         Okay, and Mr. Miedel, have you had an opportunity to

18   discuss the indictment with Mr. Rahman?

19         MR. MIEDEL:  Yes, Your Honor, I have.

20         THE COURT:  And were you able to have it translated

21   for him either in written form or orally?

22         MR. MIEDEL:  Yes, Your Honor, orally.

23         THE COURT:  And does he wish to have a public reading

24   of the charges against him?

25         MR. MIEDEL:  No, Your Honor, he does not.

1    THE COURT:  And how does he plead to Counts 1 and 2

2    in the indictment?

3    MR. MIEDEL:  He pleads not guilty to both counts.

4    THE COURT:  The Court notes that Mr. Rahman is

5    waiving his right to a public reading and is entering a plea of

6    not guilty to the two counts in the indictment.

7    Okay, pursuant to federal Rule of Criminal Procedure

8    5(f), I'm reminding the Government of its obligations under

9    Brady v. Maryland and the cases that follow it to turn over to

10   Mr. Yassine and Mr. Rahman all information, whether it's

11   admissible or not, that's favorable to the Defendant material

12   either to guilt or to punishment and which is known to the

13   Government.

14   The Government must make good faith efforts to

15   disclose such information as soon as reasonably possible.

16   I'll be entering a written order that more fully

17   details these obligations and the consequences of failing to

18   abide by them.

19   But at this point, I'd like the Government to confirm

20   that it understands it has Brady obligations and will comply

21   with them?

22   MS. BERENSON:  Yes, Your Honor.

23   THE COURT:  Ms. Berenson, anything you need to put on

24   the record now about consular notification?

25   MS. BERENSON:  The Government can confirm that it

1   made consular notification for both Defendants.

2            THE COURT:  Okay, anything from the Government before

3   we turn to bail?

4            MS. BERENSON:  Only a scheduling matter, Your Honor.

5   The Government understands from Judge Komitee's deputy that the

6   first status conference in this case is scheduled for May 31st

7   at 3:00 p.m.

8            THE COURT:  And is the Government seeking to exclude

9   time on the speedy trial up until that date?

10           MS. BERENSON:  Yes, Your Honor.

11           THE COURT:  Okay, Ms. Colson, Mr. Miedel, do you want

12  to address those applications now or after we discuss bail?

13           MS. COLSON:  Why don't we do it after we address bail

14  because the Government just handed us the form and we have yet

15  to review it with our clients.  So we'll need a few minutes to

16  do that.

17           THE COURT:  Okay.  I've -- let's turn to bail.  I

18  reviewed a detention letter, I'll call it, from the Government.

19           Has Defense counsel had an opportunity to review

20  that?

21           MS. COLSON:  Yes, Your Honor.

22           MR. MIEDEL:  Yes, Your Honor.

23           THE COURT:  Okay I've read the detention letter.  Ms.

24  Berenson, do you need to put on the record or say anything in

25  addition or would you just like to respond to any arguments

1    made by Defendants at this point?  I have no preference since

2    I'm not trying to --

3              MS. BERENSON:  Your Honor, I'm happy to let Defense

4    counsel proceed and I can respond if the Court has any

5    questions.  Thank you.

6              THE COURT:  I do have one question, which is more of

7    a procedural question than anything else.  Because one of the

8    predicate acts for the money laundering is a narcotics

9    conspiracy or -- does that make this a presumption case?

10             MS. BERENSON:  I do not believe it does, Your Honor.

11             THE COURT:  Okay.

12             MS. BERENSON:  However, as noted in the Government's

13   letter, I do believe that the same considerations underlying

14   that policy apply here.

15             THE COURT:  I understand.  Okay, Ms. Colson, I'll

16   hear from you first unless, you know, Mr. Miedel want to go

17   first, I'm --

18             MS. COLSON:  Thank you, Your Honor.  As the Court

19   knows, the question under the Bail Reform Act is whether there

20   is a condition or combination of conditions that would

21   reasonably assure Mr. Yassine's appearance in Court.  And we

22   believe there are.

23             Mr. Yassine is 51 years old and he has no criminal

24   history.  We appreciate the Government's detailed recitation of

25   its evidence in its detention letter, but this is not a

1    presumption case.  There are no allegations of violence and

2    there is no mandatory minimum sentence.

3              We have a strong bail package.  Mr. Yassine does not

4    have family in the United States, but he does have close family

5    friends here, who are willing to sign a bond for him and have a

6    place for him to live.

7              Actually, Mr. Yassine and Mr. Rahman are from the

8    same village in Lebanon.  And there are four suretors available

9    to sign the bond.

10             So it is up to the Court's discretion whether it

11   would be preferable to have two sign Mr. Yassine's bond and two

12   sign Mr. Rahman's bond or whether the Court would prefer to

13   have all four sign each one of their bonds.

14             THE COURT:  Ms. Colson, I don't mean to interrupt

15   you.  I have a couple questions, which I'm happy to wait till

16   you're finished or ask you now.

17             MS. COLSON:  Whatever the Court prefers.

18             THE COURT:  Before we get to the parts about the bail

19   package, which I -- and you may not be able to answer this

20   question I'm about to pose to you.  Has Mr. Yassine ever been

21   in the United States before?

22             MS. COLSON:  I believe the answer is no, but I want

23   to confirm.

24             THE COURT:  And if you'd like, I have a couple other

25   questions --

1           MS. COLSON:  Okay.

2           THE COURT:  -- which may -- you can do all of them at

3   once.

4           MS. COLSON:  Okay.

5           THE COURT:  -- if you need to talk to Mr. Yassine.

6   The suretors that you're presenting, these are, you know, just

7   so the record is clear about what I'm considering if I'm

8   considering it in terms of I want to give whatever strength is

9   due, you know, close family friend can mean all kinds of

10  things.

11          My parents have close family friends, who I would

12  call close family friends, but I would never have talked to

13  them in any frequent basis.

14          Then are there close family friends, where because of

15  the nature of our relationship, my parents are friends, my

16  family is friends, and I'm too are friends.

17          But to the extent that that is something that you're

18  trying to add here that would helpful, the other part I'll let

19  you translate, I'm sorry.

20          Is -- are they proposing that they -- Mr. Yassine

21  stay with them?  And if so, where is that?

22          MS. COLSON:  I can answer that question.  They are

23  proposing that Mr. Yassine stay with one of the suretors, Ahmad

24  Sabri (phonetic).  He is an engineer for the Ford Motor

25  Company.  He has been in the United States 40 yoars and is a

1    naturalized U.S. citizen.

2              And he owns a second home in Michigan, where he is

3    proposing that Mr. Yassine and Mr. Rahman live together.  I

4    have provided that address to the Government.

5              I can put it on the record here as well, but Mr.

6    Sabri owns the home outright.  There is no mortgage.  And it's

7    in Grand Junction, Michigan.

8              THE COURT:  Okay, go ahead.  Those are my questions

9    thus far.

10             MS. COLSON:  Okay, all right, so why I don't take a

11   moment just to with the help of the interpreter ask Mr. Yassine

12   about the -- your first two questions?

13             THE COURT:  Okay.

14             MS. COLSON:  No?

15             THE INTERPRETER:  We can do it through the

16   microphone.

17             MS. COLSON:  Okay.

18             THE COURT:  But unfortunately, then I'm hearing.

19             THE INTERPRETER:  Oh sorry.

20             THE COURT:  This is supposed to be a private

21   conversation there.  I can't --

22         (The Defendant and counsel confer off the record)

23             MS. COLSON:  Oh, 15?  Okay, and I stand corrected.

24   The village is actually a small village of 15,000 people.  Many

25   of the families are related and they all know each other.

1         Mr. Yassine knows all four of the proposed suretors.

2    With respect to the two, who are proposed for him specifically,

3    I'll start with Mr. Sabri.

4         Mr. Sabri's -- is the brother of his uncle's wife.

5    And they know each other.  And with respect to Yahia Hamzy

6    (phonetic), Mr. Hamzy's nephew is married to Mr. Yassine's

7    cousin.

8              THE COURT:  Okay.

9              MS. COLSON:  So both of the suretors, potential

10   suretors for Mr. Yassine, are U.S. citizens.  They're both

11   employed.

12        As I said, Mr. Sabri is an engineer at the Ford Motor

13   Company in Michigan.  Mr. Hamzy is the IT manager at a JP

14   Morgan Chase in Tampa, Florida.

15        I provided copies of their identification, paystubs,

16   and bank statements to the Government.  And I believe the

17   Government has vetted both of them, in fact, all four suretors.

18   And I know that Pre-Trial Services spoke with the suretors

19   earlier today.

20        Mr. Yassine's family in Lebanon is also willing to

21   post cash in an amount suitable to the Court.

22        The initial amount that we discussed was $10,000, but

23   they may be able to post more than that if the Court requires

24   it.

25        And I should say, Your Honor, knowing that the

1    Government was going to oppose bail, I did ask some of my

2    defense colleagues whether they have ever had clients who had

3    been extradited here released on bail.  And I was provided with

4    multiple examples.

5          And I will just put a couple of those examples on the

6    record.  There is U.S. v. Haile, which is 20-CR-60.  That's an

7    Eastern District of New York case.

8          It involves three Canadian citizens charged with I

9    think a 10 to life marijuana charge.  And my understanding is

10   all three are on bail now in Toronto with no pre-trial

11   supervision.

12         The case is before Judge Ross.  They pled guilty

13   remotely before Judge Ross and they remain on bail in Canada.

14         One additional case I will put on the record is U.S.

15   v. Bernardini, 21-CR-458.  That's in the Southern District of

16   New York.  It involves a British citizen, who was charged with

17   wire fraud and aggravated identity theft.

18         He had no ties to the United States and he was

19   arrested at JFK Airport coming here to visit.  He was released

20   on a bond and he is living I believe with a friend somewhere in

21   the West Village.

22         And the last case I want to put on the record, I know

23   this is slow-going, but -- so I appreciate the Court's

24   attention, is a case of mine, U.S. v. Hussein, 16-CR-117.

25         It was also an Eastern District case.  And the reason

1  I mention is because it also involved a Lebanese citizen who

2  was extradited to this country.

3          And he was released to go live with relatives in

4  Michigan.  I do have some additional examples if the Court

5  wishes to hear them.

6          THE COURT:  No, thank you.

7          MS. COLSON:  Okay.

8          THE COURT:  I'm happy to let you put up that one

9  record.  I was trying while you were speaking to pull the

10  docket sheets in the couple that you had mentioned, but trying

11  to do two things at once doesn't really work for me.  So --

12          MS. COLSON:  Okay, okay.

13          THE COURT:  -- I was unable to do that.  So --

14          MS. COLSON:  Well, I will --

15          THE COURT:  -- I wasn't not paying attention just so

16  you know.

17          MS. COLSON:  Okay.  I will also -- I will move on.  I

18  did -- one last thing I wanted to mention.

19          THE COURT:  Sorry, I have one question.  The bond

20  that you are proposing, is it a secure bond or?

21          MS. COLSON:  As I said, it could be secured by cash,

22  Your Honor.

23          THE COURT:  And the reason I ask was because you

24  mentioned the one suretor owns the property outright.  That was

25  why I was asking for clarification on that point.

1          MS. COLSON:  Understood, understood.

2          THE COURT:  Okay.

3          MS. COLSON:  Your Honor, finally, just wanted to

4    mention that Mr. Yassine and Mr. Rahman have spent the last

5    nine months at a prison in Tbilisi, Georgia awaiting

6    extradition.

7          They were brought to the United States over the

8    weekend and I believe they have spent one night at the MDC.

9          My understanding is that the conditions at the prison

10   in Georgia were very bad.  And Ms. -- they did not get enough

11   to eat for one.  They both lost a significant amount of weight.

12   I think Mr. Rahman even more than Mr. Yassine.

13          And they did not get appropriate medical treatment.

14   And Mr. Yassine has multiple medical conditions, which are

15   listed in the Pre-Trial Report.  They both need medical care

16   and their release will enable them to get the care that they

17   need.

18          They both agreed to abide by home detention with

19   electronic monitoring.  And they have also agreed and

20   understand that if they are released, they will likely have to

21   travel back and forth from Michigan on the public bus, because

22   they will not have their passports.

23          And I know that this is possible because when I

24   represented Mr. Hussein, he also travelled from Michigan to New

25   York on the public bus.  I think that's it, Your Honor, thank

1    you.

2            THE COURT:  Ms. Berenson?

3            MS. BERENSON:  I didn't know if Mr. Miedel had --

4            MR. MIEDEL:  Your Honor, if I could make a very

5    similar argument to Ms. Colson and then Ms. Berenson can

6    respond or whatever the Court --

7            THE COURT:  Well, that's fine, too.

8            So Ms. Berenson, you don't have to go twice, but

9    you'll tell me when you're speaking specifically about each

10   Defendant to the extent that there are differentiating

11   arguments?

12           MS. BERENSON:  Yes, Your Honor.

13           THE COURT:  Okay.

14           MR. MIEDEL:  Your Honor, on behalf of Mr. Rahman --

15           THE COURT:  Oh, just the translation.  I don't know -

16   -

17           MR. MIEDEL:  Oh, sorry.  We have essentially the

18   identical arguments and identical bail package to present.  So

19   I don't want to -- I'm not going to repeat what Ms. Colson said

20   about that.

21           And I do want to just add a couple of things.  As we

22   established, Mr. Rahman is charged with a offense that does not

23   have a presumption against bail.

24           And it is eminently common in this courthouse that

25   individuals, who have no criminal record, who are charged with

1    a money laundering offense are bail-able and are commonly given

2    bond.

3              What obviously distinguishes this case is the fact

4    that Mr. Rahman is not a -- is -- doesn't have any ties or

5    roots to United States -- roots in the United States.

6              THE COURT:  Has he been to the United States?  You

7    don't have to answer question if you can't.

8              MR. MIEDEL:  He has not.  But that fact alone is not

9    an insurmountable hurdle.  As Ms. Colson explained, I too have

10   had experiences where individuals were extradited here from

11   countries and had no connection to the United States and were

12   bailed.

13             The Government's detention letter spends much of the

14   time talking about the strength of the case, although Mr.

15   Rahman is barely mentioned.

16             But ultimately, I, too, believe that this is a strong

17   bail package for Mr. Rahman as well.  As Ms. Colson mentioned,

18   all of the suretors are from the same village that Mr. -- also

19   Mr. Rahman and his family are from.

20             Mr. Rahman has lived in the village his entire 38

21   years.  The families all know each other.  Obviously, because

22   he has never been in the United States and some of the

23   suretors, including Mr. Sabri, has been in the United States

24   for many, many years, he does not know Mr. Sabri personally

25   that well, but he knows -- but his families are interconnected

1    back in Lebanon.

2            I would note that in the Pre-Trial Services Report,

3    Pre-Trial Services was unable to reach the two suretors that we

4    specifically proposed for Mr. Rahman, but they actually right

5    after that reached out to me.

6            I spoke to Mr. Sabri personally and invited Pre-Trial

7    Services to reach out to them again if that were to become

8    necessary.  They are clearly available and willing to sign the

9    bond.

10           Finally, I would just say that there are conditions

11   we believe that would allow for release here, which may include

12   home confinement, GPS monitoring.  Anything that the Court

13   wishes to impose would be acceptable.  Thank you.

14           THE COURT:  Ms. Berenson?

15           MS. BERENSON:  Your Honor, respectfully, the

16   Government disagrees with Defense counsel's statement that

17   there exists a condition or set of conditions that could secure

18   the Defendant's release in this case.

19           Notably, neither Defendant has any connection at all

20   to this country.  Their residency and citizenship in Lebanon of

21   all places is further evidence of the difficulty that the

22   United States would have in obtaining their arrest should they

23   flee.

24           The discussion in the Government's letter as to its

25   evidence was not meant to only focus on the strength of the

1    Government's case, which is strong, but it was also meant to

2    give the Court a sense of the Defendant's reach, both

3    geographically, as well as in terms of access to financial

4    resources, both using the banking system and not.

5            With respect to the relationship between the

6    Defendants and the proposed suretors, apart from being in the

7    same village in Lebanon, it's not at all clear to the

8    Government what that relationship is.

9            Simply stating that they quote unquote know the

10   Defendants doesn't necessarily speak to a deep and long-lasting

11   relationship such that they would have moral suasion over the

12   Defendants.

13           And while I don't think we need to get there, it's

14   not even clear to the Government what bail package has been

15   proposed.

16           So the Government is not aware of a proposed dollar

17   figure for either bond, let alone whether it would be secured

18   by the property owned by the potential suretor.

19           And the Government was rather taken aback by the

20   suggestion that perhaps $10,000 cash from Lebanon could be

21   posted in light of Mr. Yassine's reported assets.

22           THE COURT:  Do you have anything else?

23           MS. BERENSON:  Not unless the Court has any

24   questions, Your Honor.

25           THE COURT:  And I apologize.  My computer has been

1    acting up and I was trying to pull the detention letter.

2              MS. BERENSON:  I can hand up a hard copy to the Court

3    if you like?

4              THE COURT:  That would be great, actually.  Thank

5    you.

6              Okay, anything from Defense counsel?

7              MS. COLSON:  Yes, I do want to respond briefly.  I

8    apologize if we didn't make this clear, but the dollar figure

9    that we are proposing is $300,000.

10             The package is that each Defendant would have two

11   suretors sign or all four suretors sign should the Court

12   prefer, that they would live at Mr. Sabri's home, that they

13   would abide by home detention with electronic monitoring, and

14   that they would -- the bond would be secured by cash in an

15   amount to be determined by the Court.

16             I would just note with respect to Mr. Yassine's

17   assets, I'd like to clarify one thing in the Pre-Trial Report.

18   He does own a car.  The apartment complex that is referenced,

19   however, is owned by Mr. Yassine's father, not by Mr. Yassine.

20             Mr. Yassine and three of his brothers live in that

21   apartment complex.  There are four separate apartments, each

22   valued at approximately $100,000.

23             And, again, Mr. Yassine does not own any of those

24   apartments.  They are owned by his father.

25             THE COURT:  Okay, Mr. Miedel, anything else?

1          MR. MIEDEL:  Very briefly, Your Honor.  Ms. Berenson

2    mentioned the perhaps lack of moral suasion that exists where

3    the suretors are simply people of the same village or family

4    friends as opposed to somebody who's more closely related.

5          I would argue that the opposite I think is true

6    because I don't think that Mr. Yassine or Mr. Rahman would want

7    or wish to do anything that would cause their families in back

8    in the village to suffer the shame of causing their fellow

9    villagers to lose vast amounts of money in the United States if

10   they were not to abide by their bail conditions.  Thank you.

11          THE COURT:  Okay.

12          MS. BERENSON:  Your Honor, if I may just briefly?

13   Just so that the forest is not lost here by focusing too much

14   on the trees, I would like to remind the Court of the serious

15   conduct alleged by two foreign nationals, who fought

16   extradition to come here, have no ties here, and have access to

17   a worldwide network that moves surreptitiously tens of millions

18   of dollars for criminals.

19          THE COURT:  Okay, anything else?

20          MS. BERENSON:  No, Your Honor.

21          THE COURT:  Okay, I'm going to tell me parties my

22   decision then explain because it's not fair to a Defendant or

23   their counsel or the Government to sit around waiting while I

24   go through an explanation.

25          I'm going to deny bail.  I find that there's a

1    serious risk of flight in this case.  I think the parties are

2    in agreement that this is not a presumption case.

3            And I think even if the parties are not in agreement,

4    I find that there's -- we're not talking about a danger to the

5    community.  We're talking about risk of flight.

6            Neither Mr. Yassine nor Mr. Rahman has ever been to

7    the United States, has no ties to the United States, and makes

8    it very difficult to grant bail in what would otherwise

9    potentially be a quite bailable case.

10           I don't part ways with Ms. Colson's argument that

11   extradition case is not per se not bailable.  I agree there are

12   cases of extradition which are bailable and bailed out in this

13   Court.

14           But here, where the Government is permitted to

15   proceed on proffer, have explained that at least their evidence

16   suggests that the activities here involve millions, if not tens

17   of millions of dollars and access to financial resources and

18   means of financial resources, which appear to be illicit.

19           And given the financial magnitude and the scope of

20   the alleged deception for bail to be granted, there would have

21   to be a substantially greater bail package proposed.

22           So to be clear, a unsecured package with suretors,

23   who's relationship appears to be tangential at best to the two

24   individuals, is not anywhere close to what would persuade the

25   Court that they should be released.

1    The Court takes seriously the concept of moral

2    suasion.  And for the Court to release two individuals with no

3    ties to the United States to individuals in another state would

4    require substantially more about the nature of their

5    relationship, the strength of it, and an understanding from

6    those individuals of the obligation they'd be undertaking.

7    I realize this is on short notice and suretors are

8    not available and they're potentially available via phone.  For

9    the Court to release two individuals to them in another state

10   would affect -- would require essentially them to appear in

11   Court for vouch for the obligations they're taking --

12   undertaking.

13   I realize that's a huge imposition, but that's what

14   would be required in my mind to even begin talking about the

15   kind of package that might get the Court to consider something.

16   And there are ways of facilitating that, whether it's

17   video or other means.  So I don't mean to suggest it's not, but

18   it requires to be five feet away from me.

19   But -- and I don't discount the strong and good faith

20   efforts that have been made in this regard.  So I don't mean to

21   diminish what has been presented, but simply to point out that

22   given the lack of ties, the alleged misconduct, this package is

23   not sufficient.

24   You know -- and so for those reasons, I'm denying

25   bail, but certainly both Mr. Yassine and Mr. Rahman are free to

1    make another package, where I can deny the application, so that

2    they could appeal and simply find that there are no combination

3    of conditions if that's what they wanted to do.

4           MS. COLSON:  No, we appreciate the Court's comments.

5    We'd like to speak with our clients and their families.  And

6    it's possible we'll be able to strengthen the package and have

7    the suretors appear directly to answer Your Honor's questions.

8    And so, perhaps we could come back later in the week if we're

9    able to do so.

10          THE COURT:  I'm happy to give you that opportunity.

11   Rather than putting something on, I'll let you reach out to

12   Michelle (phonetic) or Felix to schedule it as necessary.

13          Let me say one other thing or two other small things.

14   This is of course without prejudice to the Government making

15   whatever arguments it wants to make in connection to a renewed

16   package.

17          But let me also add, I do have concerns about, you

18   know, giving over custody to another district that is not close

19   by, where individuals have to travel back and forth where, you

20   know, it's not the Government, who is paying for them to

21   transit back and forth.

22          And we have to understand how individuals would

23   basically support themselves, which is why the suretors have to

24   explain, you know, you're not just putting this person up in

25   your home with a cot and letting them sleep there.

1          It's basically -- so it's more than sunny bonnets.

2   It's basically being financially responsible in other ways for

3   the Defendant, so they can appear in Court.

4          So I leave it with that, unless there are any other

5   questions and we'll turn to exclusion of time.

6          MR. MIEDEL:  Judge, just one quick question.

7   Assuming those concerns of the Court can be met and addressed

8   and the suretors take full financial responsibility and custody

9   over the two Defendants, would in the Court's view more be

10  required for the bail package, so that we can discuss it with

11  our client's families?

12         THE COURT:  I'm trying to give as much guidance as I

13  can without pre-judging or suggesting that it's, you know,

14  axiomatic that I would grant bail, but simply to point out what

15  is not present here.

16         MR. MIEDEL:  Okay.

17         THE COURT:  Let me just say that it would, I mean,

18  this is just so that my comments can be somewhat generalizable,

19  and this is obviously the Government would say what it's going

20  to say and I'd have to consider their arguments, it would have

21  to be a secured package of -- by property.  The amount would

22  have to, you know, significant.  And there would be a strenuous

23  more than cursory allocution of the suretors.

24         And you know, so I can only speak in those general

25  ways.  Any other questions before we talk about exclusion of

1    time?

2           Would counsel like me to explain what it means to

3    exclude time or would you like the translator to explain while

4    you explain it to them?

5           MS. COLSON:  Why don't -- it might be faster if you

6    just explain it, Your Honor?

7           THE COURT:  Okay, Mr. Rahman, Mr. Yassine, there's a

8    federal law that entitles someone who is charged with a felony,

9    as you've been both charged, to what's known as a speedy trial.

10          And there, the trial must commence within and if I'm

11   wrong about this, the Government corrects me, I always get the

12   number wrong, 70 days of the initial appearance on the

13   indictment that you've been charged with.

14          It operates like a countdown clock.  So 70, 69, 68,

15   et cetera.  Now the parties -- the Government can seek to

16   basically put a pause on the clock.

17          So even though time is passing because various things

18   are occurring, the timer is stopped.  And sometimes, a

19   Defendant can choose to also pause the clock.

20          And there are many reasons either the Government or a

21   Defendant can choose to what is known as exclude time from the

22   clock.

23          One reason is both sides may wish to discuss a

24   resolution of the case, short of a trial, which is known as a

25   plea.

1       Another reason can be that because of the nature of

2   the case, it's very complex and complicated and there's a lot

3   of information that both sides wish to review.  And they don't

4   want to be forced to go to trial within that 70-day time

5   period.

6       The Government has put forth an application asking

7   you both whether you would agree to exclude time or pause the

8   clock from today until May 31st, which is the day on which the

9   next conference will take place before the judge who's

10  presiding over the case.

11      In other words, the time from today until May 31st

12  would not count towards the 70 days in which a trial must

13  occur.

14      Okay, counsel, you need me to explain anything else?

15      MS. COLSON:  I don't think so.  Thank you, Your

16  Honor.

17      MR. MIEDEL:  No, Your Honor.  And just for the

18  record, I discussed with Mr. Rahman the fact that we would want

19  to take the next 30 days to review evidence in the case and

20  possibly engage in discussions with the Government and he's

21  agreed to that.

22      THE COURT:  Ms. Colson, I don't know what -- if you

23  and your clients need to use the interpreter, speak with your

24  clients or whether --

25      MS. COLSON:  I think just for one minute, Your Honor.

1  It would be very brief.

2          THE COURT:  Yes.

3       (Pause)

4          THE COURT:  Ms. Berenson, do you want to put anything

5  else on the record about the reason to exclude time?

6          MS. BERENSON:  No, thank you, Your Honor.

7          THE COURT:  For the reasons I explained, I'm

8  excluding or I should say for the reasons stated in the

9  application, I'm excluding time under the Speedy Trial Act from

10 today May 2nd until May 31st.

11         And I note that the application has been signed by

12 both Mr. Rahman, Mr. Yassine, their respective counsel, and the

13 Government.

14         Okay, anything else from the Government?

15         MS. BERENSON:  No, Your Honor.

16         THE COURT:  Ms. Colson, anything for your client?

17         MS. COLSON:  No.

18         THE COURT:  Mr. Miedel?

19         MR. MIEDEL:  Your Honor, I just want to note that Mr.

20 Rahman has certain medical issues that need to be addressed.

21         THE COURT:  I apologize, I meant to mention this.  I

22 remain acutely aware of the difficulties at the MBC to getting

23 Medicare and/or other basic requirements for -- my patience on

24 these matter is quite low and I'm willing to sign whatever

25 order is necessary to effectuate medical treatment for either

1    of your clients, including transportation for out of facility

2    care or examination in light of their prolonged in any case but

3    also in light of their prolonged stay in a facility outside the

4    United States, which had been represented to be not able to

5    meet their needs.

6              I realize that some people believe that those orders

7    are unenforceable, but we'll cross that bridge when we come to

8    it.

9              So that's a long way of saying if there's

10   applications you need to make in writing or otherwise, I'm

11   happy to entertain them.

12             MR. MIEDEL:  Well, Your Honor, I just really at the

13   outset, I would ask that the Court direct MBC to conduct an

14   immediate evaluation of Mr. Rahman's medical condition, which

15   it appears to be diabetes related high blood pressure, and I

16   think resulting pain in his right leg, but --

17             THE COURT:  I will sign the typical medical order

18   with that instruction.

19             MR. MIEDEL:  Thank you.

20             MS. COLSON:  Your Honor, I should just add on behalf

21   of Mr. Yassine, that he also has medical problems that need to

22   be attended to immediately.  Those include high blood pressure,

23   high cholesterol, heart issues, and acid reflux.

24             And the medications that he takes and has taken are

25   listed in the Pre-trial Services Report.

1          THE COURT:  I'm happy to -- I'm willing to sign

2     appropriate medical order for them as well.

3          MR. MIEDEL:  And Your Honor, just in light of the

4     MDC's failures that we're all aware of, I would also ask that

5     the Court direct the MDC to report back to the Court once it

6     has complied with the directives.

7          THE COURT:  I will enter that as well.

8          MR. MIEDEL:  Thank you.

9          THE COURT:  Yes, for both Defendants.

10         All right, I wish you all good health.  Have a nice

11    day.

12         MS. BERENSON:  Good night, Your Honor.

13       (Proceedings concluded at 5:20 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25

1    **CERTIFICATE**

2

3

4        I, Chris Hwang, court approved transcriber, certify

5    that the foregoing is a correct transcript from the official

6    electronic sound recording of the proceedings in the above-

7    entitled matter.

8

9

10

11

12

13    _____          May 9, 2022

14    Chris Hwang                Date

15    Transcriber

16

17

18

19

20

21

22

23

24

25